**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

)
FRANK DAVID SEINFELD,                          )
                                               )          Civil Action No. 03-5225
               Plaintiff,                      )
                                               )              **OPINION**
       v.                                      )
                                               )
HANS W. BECHERER, GORDON M.                    )
BETHUNE, JAIME CHICO PARDO,                    )
ANN M. FUDGE, JAMES J. HOWARD,                 )
BRUCE KARATZ, RUSSELL E.                       )
PALMER, IVAN G. SEIDENBERG,                    )
MARSHALL N. CARTER, DAVID                      )
M. COTE, ROBERT P. LUCIANO,                    )
JOHN R. STAFFORD, MICHAEL                      )
W. WRIGHT, and HONEYWELL                       )
INTERNATIONAL, INC.,                           )
                                               )
               Defendants.                     )
_____)

**KATHARINE S. HAYDEN, U.S.D.J.**

        This matter comes before the Court by way of the defendants' motion to dismiss

plaintiff's claims.   Plaintiff is a shareholder of defendant Honeywell International, Inc.

("Honeywell" or the "Company"), a publicly traded corporation organized under the laws of

Delaware.  (Am. Compl. at ¶¶ 3, 5.)   Defendants Hans W. Becherer, Gordon M. Bethune, Jaime

Chico Pardo, Ann M. Fudge, James J. Howard, Bruce Karatz, Russell E. Palmer, Ivan G.

Seidenberg, Marshall N. Carter, David M. Cote, Robert P. Luciano, John R. Stafford, and

Michael W. Wright are members of Honeywell's board of directors (the "Board").  (Id. at ¶ 6.)

This lawsuit seeks relief on the theory that the defendants failed to include sufficient information

1

in Honeywell's March 17, 2003 proxy statement (the "Proxy Statement") that solicited shareholder approval of the Honeywell 2003 Stock Incentive Plan (the "2003 Plan"). Plaintiff alleges the Proxy Statement violates Section 14(a) of the Securities and Exchange Act of 1934 and various securities regulations, because it fails to state adequately the number of shares available under the 2003 Plan and the cost of the plan.

The 2003 Plan authorizes Honeywell's Management Development and Compensation Committee (the "Committee"), in its discretion, to issue stock options, stock appreciation rights ("SARs"), performance awards, restricted units, restricted stock, and other stock-based awards to eligible Honeywell employees. (Certification of Anthony M. Gruppuso ("Gruppuso Cert."), Exh. B at 28-29.) Under the heading "SHARES AVAILABLE FOR ISSUANCE," the Proxy Statement specifies that "[t]he maximum number of Shares that may be issued to Participants under the Plan is 33,888,057 . . . ." (Id., Exh. B at 32.) Per the Proxy Statement, additional shares may become available under the following circumstances:

> In addition, any Shares relating to Awards under the Plan, the 1997 Honeywell Stock and Incentive Plan, the 1993 Employees Plan, the 1993 Honeywell Stock and Incentive Plan, the 1988 Honeywell Stock and Incentive Plan, the 1985 Stock Plan for Employees of AlliedSignal Inc. and Its Subsidiaries, and the Honeywell Employee Stock and Incentive Plan (collectively, the 'Prior Plans') that expire or are forfeited, cancelled or settled in cash in lieu of Shares on or after January 1, 2003, will again be available pursuant to new Awards under the Plan.
>
> Shares issuable under the 2003 Stock Incentive Plan may consist of authorized but unissued Shares or Shares held in Honeywell's treasury. In determining the number of Shares that remain available under the Plan (including Shares originally authorized under the 1993 Employees Plan), only Awards payable in Shares will be counted. If an Award under the Plan or any Prior Plan is terminated on or after January 1, 2003, by expiration, forfeiture,

2

cancellation or for any other reason without issuance of Shares, or
is settled in cash in lieu of Shares, the Shares underlying such
Award will be available for future Awards under the 2003 Stock
Incentive Plan.  Also, if Shares are tendered or withheld on or after
January 1, 2003, in payment of all or part of the Exercise Price of a
Stock Option, or in satisfaction of tax withholding obligations,
these Shares will be available for future Awards under the 2003
Stock Incentive Plan.  In addition, Shares may be reacquired under
the Plan with cash tendered in payment of the Exercise Price of a
Stock Option or with moneys attributable to the tax deduction
enjoyed by Honeywell upon the exercise or disqualifying
disposition of Stock Options.  The Committee may also grant
Shares under the Plan in connection with the assumption,
conversion or substitution of Awards as a result of the acquisition
of another company by Honeywell or a combination of Honeywell
with another company.

(Id., Exh. B at 32-33.)  The foregoing information also appears in the Plan itself, which is

attached to the Proxy Statement.  (Id., Exh. B. at 32-33; A-16.)

     The Proxy Statement states further that "[t]he actual amount of the 2003-04 Performance

Award is not presently determinable because these amounts are dependent on the level of

attainment of the applicable Performance Measures as of the end of the 2003-04 Performance

Cycle and the ability of the Committee, in its discretion, to reduce the amount of the Awards."

(Id.)  Moreover, the Proxy Statement states the annual amount of awards to be granted under the

2003 Plan "is not expected by the Committee to be materially different than the aggregate annual

amount of Awards granted under the 1993 Employees Plan."  (Id.)  As of the issuance of the

Proxy Statement, no awards had been made under the 2003 Plan.  (Id., Exh. B. at 35.)

     Plaintiff filed this action on November 3, 2003.  On February 20, 2004, he filed the

Amended Complaint, which alleges that the Proxy Statement violated Section 14(a), Rule 14a-9,

and federal regulations pertaining to the contents of proxy statements because it misrepresented

or omitted the total number of shares underlying stock-based awards under the Plan (Am. Compl. at ¶¶ 3, 19, 20-21), and failed to disclose the cost of stock options and other stock-based awards under the Plan "by means of the Black-Scholes option pricing model or a binomial model."[1] (Id. at ¶¶ 18, 23-24.)  Based on these alleged violations, plaintiff seeks judgment voiding the 2003 Plan and enjoining payments under it; requiring defendants to account for Company losses resulting from the alleged violations; directing defendants to establish a "fair and reasonable" stock incentive plan; enjoining defendants from issuing proxy statements that omit fair and adequate disclosure concerning stock-based benefits; and awarding attorneys fees and costs.  (Id. at pg. 8-9.)

Defendants move to dismiss the Amended Complaint on three grounds:  (1) plaintiff failed to make a demand upon the Company's Board pursuant to Federal Rule of Civil Procedure 23.1 or, alternatively, to allege with particularity why demand is excused; (2) the Amended Complaint fails to meet the heightened pleading standards of the Private Securities Litigation Reform Act; and (3) the Amended Complaint describes no material omissions that are actionable under Section 14(a).

---

[1]  Economists Fisher Black and Myron Scholes developed the Black-Scholes stock option valuation model in 1971 and were awarded the Nobel Prize for its development in 1997.  The Black-Scholes model takes several variables into consideration when valuing a stock option, including (1) the price of the underlying stock on the date of valuation; (2) the exercise price at which the option holder can purchase the stock; (3) the amount of time over which the option will be valid and outstanding; (4) the volatility of the underlying stock; and (5) the risk-free rate of interest at the time the option is being valued.  See Mathias v. Jacobs, 238 F. Supp. 2d 556, 574 n.12 (S.D.N.Y. 2002).

4

## DISCUSSION

### I.     Legal Standards

A pleading may be dismissed under Rule 12(b)(6) for "failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." Chugh v. Western Inventory Servs., Inc., 333 F. Supp. 2d 285, 289 (D.N.J. 2004) (citations and quotations omitted). In deciding a motion to dismiss for failure to state a claim, courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002); Chugh, 333 F. Supp. 2d at 289. Legal conclusions made in the guise of factual allegations are not given the presumption of truthfulness. See Papasan v. Allain, 478 U.S. 265, 286 (1986).

 In deciding a motion to dismiss, courts may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 375-76 (3d ed. 2004). Courts may also consider documents that are "integral to or explicitly relied upon in the complaint", Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotations omitted), or undisputedly authentic documents that form the basis of the plaintiff's claims, PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Accordingly, the Court may rely upon the proxy statement at issue here without converting this motion into one under Rule 56.

Notably, a party asserting a claim under the federal securities laws must generally meet the Private Securities Litigation Reform Act's ("PSLRA") heightened pleading standard. Under

the PSLRA,

> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C.A. § 78u-4(b)(1); see also In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1329 (3d Cir. 2002) (applying the heightened pleading standard of 15 U.S.C. § 78u-4(b)(1) to plaintiff's Section 14(a) and Rule 10b-5 fraud claims).

As to this, plaintiff argues the PSLRA does not apply to the Amended Complaint because it does not allege fraud. Very recently, the Third Circuit held that "[w]hile claims brought pursuant to section 14(a) of the 1934 Act do not require that scienter be pleaded, any claims brought under the 1934 Act must meet the PSLRA particularity requirements . . . *if a plaintiff elects to ground such claims in fraud*." California Pub. Employees' Ret. Sys. v. Chubb Corp., No. CIV.A.03-3755, 2004 WL 3015578, at *11 (3rd Cir. Dec. 30, 2004) (emphasis added) (citing In re NAHC, 306 F.3d at 1329). In her dissent, Judge Sloviter concluded the plaintiffs should have been granted leave to amend their Section 14(a) claims because, "if divorced from any allegations of fraud, [they] would not be subject to heightened pleading requirements of the PSLRA." 2004 WL 3015578, at *33. Judge Sloviter further noted that if plaintiffs were granted

leave to amend, their Section 14(a) claim would be governed by the "short and plain statement" standard of pleading embodied in Federal Rule of Civil Procedure 8(a)(2).  Id. at *34. Accordingly, it appears the Third Circuit would not subject Section 14(a) claims that do not arise from an alleged fraud to the heightened pleading standards of the PSLRA.

Carefully, the Amended Complaint avers that this case "is not a securities fraud class action," and "does not present the possibility of abuse that Congress sought to remedy with the Private Securities Litigation Reform Act of 1995 . . . ."  (Am. Compl. at ¶ 4.)  Plaintiff further alleges defendants "knew or should have known" the Proxy Statement "was materially false and misleading and failed to comply with the SEC regulations."  (Id. at ¶¶ 20, 24.)  But while plaintiff styles his claim as negligence, he alleges "an ordinarily loyal board of directors does not (or should not) adopt a multi-billion dollar project without knowing the cost," implying the board breached not only its duty of reasonable care but its duty of loyalty.  (Id. at ¶ 21.)

The Court need not decide whether or not these claims "sound in fraud" and are subject to the heightened pleading standard of the PSLRA, however, because as set forth below, the Court concludes that plaintiff's claims fail even under Rule 8(a)(2).

## II.     Plaintiff's Section 14(a) Claims

Section 14(a) of the Securities Exchange Act of 1934 governs the solicitation of proxy statements and provides that

> [i]t shall be unlawful for any person, . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, . . . to solicit any proxy . . . in respect to any security . . . registered pursuant to section 78$l$ of this title.

15 U.S.C.A. § 78n(a).  Rule 14a-9, promulgated under Section 14(a), in turn provides that no

proxy statement shall contain

> any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9.  Section 14(a) seeks to prevent management or others from obtaining shareholder authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations.  J.I. Case v. Borak, 377 U.S. 426, 430-31 (1964); Shaev v. Saper, 320 F.3d 373, 379 (3d Cir. 2003); Gould v. Am.-Hawaiian S.S. Co., 535 F.2d 761, 777-78 (3d Cir. 1976). A proxy statement should inform the person reading it, not "challenge the reader's critical wits, or make stockholders unwitting agents of self-inflicted damage."  See Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1097, 1103-04 (1991).  Thus an omission of information from a proxy statement will violate Section 14(a) "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading."  Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002).  Section 14(a) provides shareholders with an implied cause of action to seek relief when a false or misleading proxy statement interferes with "fair corporate suffrage." J.I. Case, 377 U.S. at 430-31.

To state a claim under Section 14(a), a plaintiff must allege that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was

'an essential link in the accomplishment of the transaction.'" Shaev, 320 F.3d at 379 (quoting

General Electric Co. by Levit v. Cathcart, 980 F.2d 927, 932 (3d Cir. 1992)).  An omitted fact is

"material" if there is "a substantial likelihood that a reasonable shareholder would consider it

important in deciding how to vote." Id. (citing TSC Indus. Inc. v. Northway, Inc., 426 U.S. 438,

449 (1976); Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 384 (1970)).  Put another way, "there

must be a substantial likelihood that the disclosure of the omitted fact would have been viewed

by the reasonable investor as having significantly altered the 'total mix' of the information made

available." TSC Industries, 426 U.S. at 449.

Plaintiff alleges the Proxy Statement issued in connection with the 2003 Plan violates

Section 14(a) because it omits material information required under 17 C.F.R. § 240.14a-101 et

seq. ("Schedule 14A").  Schedule 14A is a section of the SEC regulations governing proxy

disclosure that is considered "persuasive authority as to the required scope of disclosure in proxy

materials [because] the regulation provides us with the SEC's expert view of the types of

involvement in legal proceedings that are most likely to be matters of concern to shareholders in

a proxy contest." Cathart, 980 F.2d at 937 (quotations omitted).  Plaintiff claims that the Proxy

Statement violates various provisions of Schedule 14A because it omits the total number of

shares underlying the stock-based awards and the cost of the 2003 Plan.

### A.       Number of Shares Available Under the 2003 Plan

According to plaintiff, the Proxy Statement is materially deficient under Section 14(a)

because "the reasonable investor, reading the Proxy Statement, understood that only

approximately 33 million shares were available to underlie awards under the plan."  (Am. Compl.

at ¶ 19.)  Plaintiff further alleges 17 C.F.R. § 240.14a-101, Item 10(b)(2)(i)(A) calls for

disclosure of the number of shares available under a plan, regardless of whether or not "such benefits or amounts are determinable", and that defendants' omission of the number of shares violated 17 C.F.R. § 240.14a-101, Item 20.  (Id. at ¶ 17.)

### i.      Adequacy of Disclosure

Defendants argue in this motion that the Proxy Statement adequately specifies the number of shares available for issuance under the 2003 Plan and the circumstances under which that number may increase.  (Defs' Br. at 21-22.)  In support, defendants cite Shaev v. Hampel, No. CIV.A.99-10578, 2002 WL 31413805 (S.D.N.Y. Oct. 25, 2002) aff'd, 2003 WL 22139567 (2d Cir. 2003)[2], in which the district court dismissed claims that an analogous proxy statement improperly omitted the number of shares available under a stock option plan.  In Shaev, plaintiff alleged the statement that 14 million shares were available under the plan was misleading because other sections of the plan recited circumstances under which the total number could be increased.  2002 WL 31413805, at *7.  In rejecting that argument, the district court held that "[n]o reasonable shareholder reading the entirety of the Proxy Statement would have believed that the Plan was authorizing only 14 million shares" because "the Proxy Statement clearly discloses that additional shares could become available under three circumstances . . . ."  Id. at *8 (citation omitted).  The district court in Shaev further held that plaintiff's amended complaint lacked any substantiation that its proposed "reasonable estimates" of the number of shares "would have been anything more than speculation" and such speculation is discouraged under federal law.  Id. (citations omitted).

---

[2]  Plaintiff's counsel here also represented the plaintiff in Shaev v. Hampel.

Here, just as in <u>Shaev</u>, the Proxy Statement specifies the number of shares available under the 2003 Plan (33,888,057), and indicates that the number of shares may increase if, for example, shares relating to awards under "Prior Plans" were forfeited, cancelled, or settled in cash on or after January 1, 2003; or if certain shares were reacquired; or shares were made available as a result of the acquisition of or combination with another company.  (<u>See</u> Gruppuso Cert., Exh. B at 32.)  In considering the adequacy of the disclosure, this Court takes note of <u>Werner v. Werner</u>, 267 F.3d 288, 297 (3d Cir. 2001), where the Third Circuit explained that "[u]nder the 'buried facts' doctrine, a disclosure is deemed inadequate if it is presented in a way that conceals or obscures the information sought to be disclosed.  The doctrine applies when the fact in question is hidden in a voluminous document or is disclosed in a piecemeal fashion which prevents a reasonable shareholder from realizing the 'correlation and overall import of the various facts interspersed throughout' the document."  <u>See</u> <u>Kohn v. American Metal Climax, Inc.</u>, 322 F. Supp. 1331, 1362 (E.D. Pa. 1970) (holding 200 page proxy statement explaining proposed merger buried crucial facts, which, by reason of their importance, "should have in some way been highlighted to insure that the shareholders were aware of them," and concluding that defendants' failure to adequately present those facts constituted a violation of Section 14(a)).

This Proxy Statement is 44 pages long with 7 pages devoted to the 2003 Plan.  (Gruppuso Cert., Exh. B at 28-34.)  Prominently displayed on page 32 is the section title "SHARES AVAILABLE FOR ISSUANCE."  The first sentence of that section states the number of available shares is 33,888,057.  (<u>Id.</u>, Exh. B at 32.)  The following sentences set forth the circumstances under which the number of available shares may be increased.  (<u>Id.</u>, Exh. B at 32-33.)  This information is disclosed in the appropriate section of the Proxy Statement, and the

possibility of an increased number of shares is not addressed in a piecemeal fashion.  As such, the Court finds that the disclosure is not buried nor challenging to a reader and determines that the Proxy Statement, contrary to plaintiff's theory, adequately discloses the number of shares available under the 2003 Plan and the circumstances under which that number could increase.

Moreover, the Amended Complaint does not allege that more specific estimates could have been calculated or that estimates about increased shares would be anything more than speculation and predictions about future events.  Cf. Stricklin v. Ferland, No. CIV.A.98-3279, 1998 WL 966023, at *7 (E.D. Pa. Nov. 10, 1998) (holding plaintiff who alleged a proxy statement could have included additional information without alleging anything to explain why the statement, as is, was materially misleading, fails to state a claim under Rule 14a-9).  To arrive at a more specific prediction of the number of shares available under the 2003 Plan would have required knowledge of several variables, including the preferences of shareholders who received awards under prior plans to forfeit, cancel, or exercise their stock-based benefits.  Courts have discussed the practical difficulties inherent in getting this information.  See, e.g., Freedman v. Barrow, 427 F. Supp. 1129, 1144 (S.D.N.Y. 1976) (holding that the omission of discussion of SAR holders' likely preferences of whether or not they would exercise options was not misleading and that making such a prediction would have been "an overgeneralization since the decision whether to exercise the option or the appurtenant SAR necessarily depends on individual factors such as the employee's own financial situation, his ability and willingness to borrow, and his tax consequences.").  Requiring such information in a proxy statement would result in a deluge of information regarding shareholders' personal preferences, an undue burden upon the soliciting corporation, and confusion among shareholders considering the proxy

statement.  Cf. Mendell v. Greenberg, 927 F.2d 667, 677 (2d Cir. 1991) (declining to require that major shareholders include speculative predictions of their personal finances in a proxy statement because such information would likely confuse rather than enlighten shareholders and might inundate them with trivial information).  The Court agrees with the conclusions drawn in the foregoing cases, and further is persuaded that the level of specificity this plaintiff argues for would result in an "avalanche of trivial information a result that is hardly conducive to informed decisionmaking."  TSC Industries, 426 U.S. at 448-49.

### ii.    Item 10(b)(2)(i)(A) and Item 20

As to plaintiff's remaining grounds for inadequacy of disclosure, Item 10(b)(2)(i)(A) requires "[w]ith respect to any specific grant of or any plan containing options, warrants or rights submitted for security holder action," that a proxy statement state "[t]he title and amount of securities underlying such options, warrants or rights . . . ."  Alternatively, plaintiff alleges the proxy statement violated 17 C.F.R. § 240.14a-101, Item 20, which provides "[i]f action is to be taken on any matter not specifically referred to in this Schedule 14A, describe briefly the substance of each such matter in substantially the same degree of detail as is required by Items 5 to 19, inclusive, of this Schedule . . . ."  Plaintiff argues Item 20 requires disclosure of information similar to that under Item 10(b)(2)(i)(A) as to other stock-based awards, (Am. Compl. at ¶ 14), but has provided no legal authority for his interpretation of Item 10(b)(2)(i)(A) or Item 20.

The 2003 Proxy Statement satisfies Item 10(b)(2)(i)(A).  At the time of its issuance, no awards had been made and so there had been no "specific grant" of stock-based awards under the 2003 Plan.  (See Grappuso Cert., Exh. B. at 35.)  To the extent Item 10(b)(2)(i)(A) may require

disclosure of the number of shares with regard to "any plan containing options, warrants or rights submitted for security holder action," the Proxy Statement's disclosure of the number of available shares and the circumstances under which the number of shares could increase meets that requirement.  See Seinfeld v. Gray, Slip Op. 03-7931 at 4 (S.D.N.Y. May 17, 2004) (holding a proxy statement that stated the number of shares available for issuance under a proposed plan and the circumstances under which the number of shares could increase satisfied Item 10(b)(2)(i)(A)).[3]

Item 20 appears to be a catchall provision that addresses any item "*not specifically referred to in this Schedule 14A*."  In light of the Court's holding that the Proxy Statement satisfied Item 10(b)(2)(i)(A), which specifically refers to the "amount of securities underlying such options, warrants or rights" within a proposed compensation plan, plaintiff's claim that defendants violated Item 20 is moot.

For these reasons, the Court finds no omission in the Proxy Statement regarding its disclosures about the number of shares available under the 2003 Plan that violates Section 14(a), Item 10(b)(2)(i)(A), or Item 20.

### B.    Cost of the 2003 Plan

Plaintiff's discrete allegation of material omission with regard to the cost of the 2003 Plan is that defendants failed to state the Black-Scholes value of stock-options that will be awarded, which he argues is required by their duty to disclose material information, and by 17 C.F.R. 240.14a-101, Item 10(a)(2).  (Am. Compl. at ¶¶ 22, 23.)

―――――――――――――――

[3]  Plaintiff's counsel in this case also represented the plaintiff, Latrice Seinfeld, in Seinfeld v. Gray.

14

### i.      Materiality of Black-Scholes Value

Black-Scholes values of stock options that will be issued under a proposed compensation plan is considered "soft information" – valuation opinion or projections – that is more easily subject to manipulation or error than historical data.  Lewis v. Vogelstein, 699 A.2d 327, 331 (Del. Ch. 1997).  Plaintiff's claim raises the issue of whether the Black-Scholes information is material and must be disclosed under Section 14(a).  While the Third Circuit has not addressed this specific issue, other courts have uniformly held that the Black-Scholes value of stock options is not a material component of a proxy statement seeking approval of a compensation plan.

For example, in Lewis v. Vogelstein, 699 A.2d 327 (Del. Ch. 1997), plaintiff alleged that defendants' proxy statement failed to include the present value of stock options granted to outside directors under a proposed compensation plan.[4]  The proposed plan qualified each outside director to receive a one-time grant of options on 15,000 shares and an additional grant of options based on the directors' seniority.  Id. at 330.  Plaintiff argued since Black-Scholes values are reliable enough for the Financial Accounting Standards Board ("FASB") to require them in financial statements, the directors were obligated to include the same information in shareholder proxy statements.  Id. at 332.  In rejecting plaintiff's argument, the court noted  "salient differences" between financial statements and proxy statements, including,

> [f]or instance, [that] financial statements are compiled at the end of the fiscal year, *when the value of the options granted can be assessed with greater certainty,* than is possible at the time the option plan is authorized or ratified since the market price at time of issue is known at that later point.

---

[4] Plaintiff's counsel here represented the plaintiffs in Lewis, 3Com, Resnik, Shaev v. Hampel, Cohen, Seinfeld v. Bartz, and Seinfeld v. Gray, discussed *infra*.

Id. (emphasis in original).  The opinion further noted that Black-Scholes does not take into account the effect of non-transferability of stock-options, the cost-reducing effect of early exercise, and the effect of market volatility of the underlying stock on restricted versus unrestricted options.  Id. at 332.  Given these considerations, the court concluded, "such soft information estimates may be highly problematic and not helpful at all, as for example would likely be the case here, if the options terminate two months after the holder leaves [the Company's] board, instead of continuing for ten years, as defendants assert."  Id. at 333 (internal quotations omitted).  Accordingly, the court held Black-Scholes is soft information that is not required in a proxy statement because of its unreliability.

The Delaware Chancery court in In re 3Com Corporation Shareholders Litigation, No. CIV.A.16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999), considered whether a proxy statement soliciting shareholder approval to expand the pool of shares available under an existing plan violated disclosure regulations because it omitted the Black-Scholes value of options from the underlying stock.  The plaintiff shareholder sued 10 members of the 3Com board, all but one of whom were outside directors.  Id. at *1, n.1.  At the time of the proxy statement, no options from the proposed increase had been granted or received.  Id. at *1.  Plaintiff alleged, inter alia, that the board breached its fiduciary "duty of candor" by failing to include in the proxy statement the present values of the options under the Black-Scholes option pricing model.  Id.

As in Lewis, the court rejected plaintiff's argument and held "the Black-Scholes Option Pricing Model is neither sufficiently reliable nor necessary to apprise shareholders of the value of the options in question."  Id. at *6.  The decision noted that while "[t]he plaintiff has established the usefulness of Black-Scholes in other contexts," he failed to plead "any facts to indicate that

16

this model would be of such material importance to shareholders that it would alter the total mix of information needed to properly inform shareholders." Id.  The 3Com court declined to require the inclusion of Black-Scholes in the proxy statement.

More recently, in Resnik v. Swartz, 303 F.3d 147 (2d Cir. 2002), the Second Circuit considered plaintiff shareholder's claims that defendants improperly failed to disclose in their proxy statement the Black-Scholes value of options.  The proxy statement in Resnik solicited shareholder approval of a compensation plan and included both the directors' compensation and the terms of the plan, which provided that each non-employee director would have the option to purchase 50,000 shares of company stock and could exercise those options at the higher of two prices: the closing price on February 14, 2000 or the company's closing price on the day the plan was approved.  303 F.3d at 149.  The plaintiff sued, arguing defendants' failure to include the Black-Scholes value of the options was a material omission under Section 14(a) and Rule 14(a)-9. Id. at 150.  Plaintiff argued that Item 8 of Schedule 14A, 17 C.F.R. 240.14a-101, which requires the disclosure of information set forth in Regulation S-K, 17 C.F.R. § 229.402, made such detail mandatory.  Id. at 151.  Regulation S-K requires in part that a proxy statement disclose "standard [compensation] arrangements, stating amounts, pursuant to which directors . . . are compensated for any services provided . . . ." and any "other arrangements pursuant to which directors are compensated during the last fiscal year . . ., stating the amount paid . . . ." Id. (quoting 17 C.F.R. § 229.402(g)(1)-(2)).

The district court in Resnik dismissed the complaint, reasoning that to impose such a requirement

> would thrust corporate boards into a Catch-22.  If a board includes in its proxy material a present value of options--which can only be described as a best guess based on market variables, even with numerous disclaimers regarding 'soft information' and forward looking statements--the corporation will surely run a substantial risk of suit if the information turns out to be inaccurate at a later date.  However, if the corporate board does not disclose such information it will be subject to a fraud suit such as this one.

No. CIV.A.00-5355, 2001 WL 15671, at *1 (S.D.N.Y. Jan. 8, 2001).  In affirming, the Second

Circuit observed the plain language of Regulation S-K, viewed alone and in the context of the

entire text of Item 402, does not require disclosure of the grant-date value of stock options

proposed to be provided to the directors.  303 F.3d at 152.  The court also rejected plaintiff's

argument that FASB 123 supports inclusion of Black-Scholes values in proxy statements, noting

the FASB "does not purport to address the requirements for reporting proposed compensation in

a proxy statement."  Id. at 153.  Accordingly, the Second Circuit held defendants' failure to

include Black-Scholes did not violate proxy statement disclosure regulations.  Id. at 154; see also

Shaev v. Hampel, No. CIV.A.99-10578, 2002 WL 31413805, at *5 (S.D.N.Y. Oct. 25, 2002)

(same), aff'd No. CIV.A.02-9453, 2003 WL 22139567, at *1 (2d Cir. Sept. 17, 2003); Cohen v.

Calloway, 246 A.D.2d 473 (N.Y. App. Div.) (holding speculative option value estimates "would

not have been viewed by the reasonable investor as a significant part of the total mix of

information in the proxy statement . . . and indeed the significance of such method is so

imprecise that its inclusion probably would have done more harm than good . . . .") (citations

omitted), appeal denied, 700 N.E.2d 319 (N.Y. 1998).

The district court reached a similar conclusion, and was affirmed, in Seinfeld v. Bartz,

No. CIV.A.01-2259, 2002 WL 243597, at *1 (N.D. Cal. Feb. 8, 2002).  There, the plaintiff

shareholder sued Cisco Corporation and its directors under Section 14(a) for failure to include the Black-Scholes value of stock options in a proxy statement that sought shareholder approval to increase the number of options available under an existing compensation plan.  The district court, citing Resnik, 3Com, Cohen, and Lewis, held that "[b]ased on the persuasive case law presented by Defendants, and the lack of convincing rebuttal by Plaintiff . . . as a matter of law, Black-Scholes valuations are not material for purposes of Rule 14a-9 analysis."  Id. at *4.

In affirming, the Ninth Circuit rejected plaintiff's argument that FASB 123 requires Black-Scholes values in financial statements.  Seinfeld v. Bartz, 322 F.3d 693, 697 (9th Cir.), cert. denied, 540 U.S. 939 (2003).  Calling upon the Lewis case, the court noted the "salient differences" between financial statement disclosures and proxy statement disclosures and held that SEC regulations do not require the use of the Black-Scholes valuation.  Id.  In Seinfeld v. Gray, No. 03-7931, Slip Op. at 6 (S.D.N.Y. May 17, 2004), the district court held similarly, reasoning that "disclosing the estimated cost of the Plan using the Black-Scholes or binomial option pricing model would be purely speculative as the six input variables necessary to perform the calculation were not yet known."

These cases are factually similar to this case, and the Court finds their legal analysis persuasive. Plaintiff's counsel, who represented the plaintiffs in each of the above cases, offers no authority that holds a proxy statement must include the Black-Scholes value of options. Policy arguments would perhaps be better made to the Securities and Exchange Commission rather than to the courts by means of an odyssey of lawsuits.  See Lewis, 699 A.2d at 333.

Although the Third Circuit has not addressed whether Black-Scholes values of stock-options must be included in a proxy statement seeking approval of a compensation plan, in Flynn

v. Bass Brothers Enterprises, Inc., 744 F.2d 978 (3d Cir. 1984), it addressed the disclosure of "soft information, " holding it should be disclosed if it is deemed useful, after weighing its potential for benefit against its potential for harm to shareholders.  Id. at 988.  In determining whether particular soft information is useful, courts must consider several factors:

> the facts upon which the information is based; the qualifications of those who prepared or compiled it; the purpose for which the information was originally intended; its relevance to the stockholders' impending decision; the degree of subjectivity or bias reflected in its preparation; the degree to which the information is unique; and the availability to the investor of other more reliable sources of information.

Id.  Consideration of these factors "permits an assessment of the reliability and relevance to the investor of the omitted information, as well as the probability that a given contingent event will occur."  Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 643 n.23 (3d Cir. 1989).

Applying the Flynn factors in this case yields a result consistent with those reached by courts outside the Third Circuit.

Under Flynn, which directs that the Court consider the facts on which soft information is based, Black-Scholes values based on speculation would yield unreliable information.  The 2003 Plan makes no specific grant of options, instead stating that "[a]s of the date of this Proxy Statement, no Awards have been paid under the Plan."  (Gruppuso Cert., Exh. B at 35.)  This means that the defendants lack the number of shares by which to multiply the theoretical value of an individual option.  In Lewis, Resnik, and Seinfeld v. Bartz, the courts uniformly rejected Black-Scholes values as required, and the plans in those cases actually had harder information on which to base Black-Scholes calculations.  Such calculations in this case would be even more speculative, and in turn less reliable.

Furthermore, even if the number of options the Committee would issue were determinable at the time Honeywell issued the Proxy Statement, other variables that would affect Black-Scholes value were not.  For example, the 2003 Plan provides that stock options can be granted, at the discretion of the Committee, "in the form of Nonqualified Stock Options or Incentive Stock Options or a combination of the two, at the discretion of the Committee . . . ." (Gruppusso Cert., Exh. B at 29.)  Nonqualified Stock Options are transferrable and Incentive Stock Options are not.  (Id.) (stating "Incentive Stock Options may not be transferred . . . other than by will or the laws of descent and distribution . . . .")  The court in the Lewis case found this becomes problematic because "[p]ublicly-traded options increase in value as the price volatility of the underlying stock increases.  The value of [restricted options], on the other hand, arguably decreases with increased volatility, because the holders are more likely to exercise the options early since they cannot be traded."  699 A.2d at 332.  If the amount of restricted versus unrestricted options cannot be determined, the reliability of a Black-Scholes calculation is compromised.  Moreover, to the extent the Committee issues unrestricted options, for which exercise dates cannot be determined, Black-Scholes values would be unreliable because it may not take into account the "cost-reducing effect of early exercise."  Id.  Accordingly, there is a significant risk that the limited information available to defendants at the time they issued the Proxy Statement would have yielded unreliable Black-Scholes values.

Second, while perhaps appropriate in some circumstances, Black-Scholes is an unsuitable method of predicting the cost of the 2003 Plan because it requires historical facts.  As Flynn held, an important factor in deciding whether soft information is material is the purpose for which it was originally intended.  Flynn, 744 F.2d at 988.  Plaintiff alleges that Honeywell should have

included Black-Scholes or other binomial model of stock-option valuation because it does so in its financial statements pursuant to FASB 148 and 123.  (Am. Compl. at ¶¶ 18, 21-23.)  While the FASB requires a company to include in its financial statements the cost of a stock-option compensation plan based on historic events, Item 10(a)(2)(i) calls for a forward-looking analysis. See 17 C.F.R. 240.14a-101, Item 10(a)(2)(i) (requiring inclusion in a proxy statement of "the benefits or amounts that *will be received by or allocated to* each of the following . . . .") (emphasis added).  Given their reliance on historic events, Black-Scholes values are more reliable in a retrospective analysis when variables necessary to their calculation can be ascertained.  Lewis, 699 A.2d at 332; cf. Resnik, 303 F.3d at 153 (holding FASB 123, which provides that the preferred method of valuing stock-option compensation in financial statements is to recognize the options' grant-date value as part of compensation expense, is inapplicable because it does not purport to address "proposed compensation in a proxy statement.").  Plaintiff argues the cases that defendants cite are distinguishable because none deal with FASB 148 or a company that expenses stock options pursuant to FASB 123, such as Honeywell.  (Am. Compl. at ¶ 23.)  But plaintiff does not dispute that the calculations embodied in FASB 148 deal with historic data such as grant-date value of stock-options.  Because FASB 148, like FASB 123, requires knowledge of historic data, the reasoning of the Lewis and Resnik courts applies.  Under this factor, therefore, the strength of plaintiff's argument that the Proxy Statement should contain information originally intended for a financial statement is greatly diminished.

Also, Black-Scholes predictions of the cost of the 2003 Plan would be subjective and particularly susceptible to manipulation.  Flynn holds that courts must consider the degree of subjectivity or reflected in preparing such information.  744 F.2d at 988.  If Black-Scholes

calculations are made before necessary variables such as the underlying stock price and the exercise price can be determined, then those variables must be predicted.  Predicting Black-Scholes variables leaves room for manipulation and advocacy through overly conservative cost predictions.  At the very least, this subjectivity factor underscores that Black-Scholes values in this context would be nothing more than "a best guess based on market variables" and, therefore, unhelpful to shareholders.  Resnik, 2001 WL 15671, at *1.  As such, the usefulness of Black-Scholes to shareholders is considerably undermined.

### ii.      Item 10(a)(2)(i)

Plaintiff cites no legal authority for his argument that 10(a)(2)(i) applies to the 2003 Plan. Item 10(a)(2)(i) requires disclosure of compensation amounts "*if such benefits or amounts are determinable . . . .*"  17 C.F.R. 240.14a-101, Item 10(a)(2)(i) (emphasis provided).  Nothing in Item 10(a)(2)(i) specifically states that a proxy statement such as defendants' must include Black-Scholes or any other valuation method for options.  Cf. Resnik, 303 F.3d at 151-52.  Rather, the plain language of the regulation demonstrates the Commission's intent to require disclosure of compensation amounts only if such amounts can be determined.  Here, the 2003 Plan does not contain "set benefits or amounts" and the Committee had not made any awards "subject to shareholder approval" at the time it issued the Proxy Statement.  Indeed, no awards had been made under the 2003 Plan when Honeywell issued the Proxy Statement.  (Gruppuso Cert., Exh. B. at 35.)  Moreover, the Securities and Exchange Commission has interpreted this language as requiring disclosure of amounts that will be received by or allocated to the named categories of beneficiaries only if

the plan being acted upon is: (i) a plan with set benefits or amounts

> (e.g., director option plans); or (ii) one under which some grants or awards have been made by the board or compensation committee subject to shareholder approval (e.g., action is to add shares available under an existing option plan, because there are not enough shares remaining under the plan to honor exercises of all outstanding options).

http://www.sec.gov/interps/telephone/1997manual.txt.  Cf. Seinfeld v. Gray, Slip Op. at 4 (citing the Telephone Interpretations and concluding Item 10(b)(2)(ii) does not apply to new plans "because there have been no grants under that new plan to report.").  Given the Commission's apparent intent, this Court is reluctant to read new requirements into the securities regulations in the absence of legal authority.

The dilemma that the district court discussed in Resnik v. Swartz, 2001 WL 15671, at *1, further supports the Court's conclusion.  The district court in Resnik rejected the argument that Item 8 of Schedule 14A, 17 C.F.R. 240.14a, which incorporates Regulation S-K by reference, required Black-Scholes predictions in a proxy statement.  Id.  Such a requirement, the court reasoned, would "thrust corporate boards into a Catch-22" in which disclosure carries with it the risk of fraud claims when predictions turn out to be inaccurate, and omission the risk of claims such as this plaintiff has made.  See id.  Like Regulation S-K, Item 10(a)(2)(i) requires that a proxy statement include amounts of compensation paid under a plan.  17 C.F.R. 240.14a-101, Item 10(a)(2)(i).  Item 10(a)(2)(i), however, goes further and seeks disclosure of benefits that "*will be* received by or allocated to" certain employees, something more speculative than the disclosure of existing arrangements "pursuant to which directors of the registrant *are compensated*," as required by Regulation S-K.  As Resnik demonstrates, this Court would be thrusting a virtual Catch 22 upon the Honeywell Board by requiring it to include Black-Scholes

option value forecasts in the 2003 Plan.

For all of these reasons, the Court concludes that Item 10(a)(2)(i) does not require a proxy statement relating to a new plan under which benefits have not yet been allocated to state the specific amount of benefits to be granted using the Black-Scholes or other similar valuation method.

## SUMMARY

In summary, plaintiff alleges defendants omitted material information from the Proxy Statement by failing to state the number of shares available under the 2003 Plan, which plaintiff claims is required under Section 14(a), 17 C.F.R. § 240.14a-101, Item 10(b)(2)(i)(A) and Item 20. Plaintiff further alleges defendants omitted material information from the Proxy Statement by failing to state the cost of the 2003 Plan, as determined by the Black-Scholes value of available stock options, pursuant to Section 14(a) and 17 C.F.R. § 240.14a-101, Item 10(a)(2)(i). The Court has considered all of the arguments and, after carefully weighing the authority presented by both sides, concludes that the Proxy Statement disclosed adequate information relating to the number of shares available under the 2003 Plan and its cost. The Court further concludes that, under the Flynn case in this Circuit and consistent with the analyses in cases directly addressing the issue, the Black-Scholes value of options is not material information requiring disclosure, and its absence here does not render the Proxy Statement misleading or in violation of Item 10(a)(2)(i). Thus, the Court is satisfied that plaintiff's complaint fails to allege material omissions or misrepresentations and, as such, must be dismissed.

Based on this substantive finding, the Court need not address defendants' procedural argument that the claims warrant dismissal because of plaintiff's failure to serve demand upon

the Board before filing suit pursuant to Rule 23.1.

## **<u>CONCLUSION</u>**

For the reasons stated above, this Court grants defendants' motion to dismiss.  Plaintiff's claims having been addressed and decided in favor of defendants, and it appearing that plaintiff cannot amend the Amended Complaint to remedy its deficiencies, <u>see</u> <u>In re Alpharma Inc. Sec.</u> <u>Litig.</u>, 372 F.3d 137, 153 (3d Cir. 2004), and plaintiff having not requested leave to amend, the plaintiff's Amended Complaint is hereby **dismissed with prejudice** and this case is **closed.**  An appropriate order will be filed.


January 27, 2005                                   s/ Katharine S. Hayden                     
                                                             KATHARINE S. HAYDEN, U.S.D.J.